UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

|   |   |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:26-cr-00040-TLN |
| Plaintiff, | |
| v. | **ORDER** |
| DAVID TOWNER, | |
| Defendant. | |

This matter is before the Court on Defendant David Towner's ("Defendant") Motion to Revoke Denial of Bail and Detention Order. (ECF No. 23.) The Government filed an opposition. (ECF No. 25.) Defendant replied. (ECF No. 26.) This matter was submitted without hearing. (ECF No. 24.) For the reasons set forth below, the Court DENIES Defendant's motion and affirms the pretrial detention order.

///

///

///

///

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On March 18, 2026, the Government filed a criminal complaint charging Defendant with two counts of Distribution of Methamphetamine in violation of 21 U.S.C. § 841(a)(1).  (ECF No. 1).  A grand jury later returned an Indictment on the same charges.  (ECF No. 13.)

On March 23, 2026, U.S. Chief Magistrate Judge Carolyn K. Delaney ordered Defendant detained pending trial.  (ECF No. 9.)  Judge Delaney found Defendant presented a danger to the community that could not be sufficiently mitigated with conditions of release.  (*Id.*)

Thereafter, Defendant moved for bail review in light of new information, including confirmation of employment, enrollment into mental health services, and an additional surety.  (ECF No. 10.)  On March 27, 2026, U.S. Magistrate Judge Allison Claire denied Defendant's motion for bail, finding the release plan insufficient to reasonably assure the safety of the community.  (ECF No. 12.)

Defendant filed a second motion for bail review with a revised bond package, including additional assets.  (ECF No. 20.)  On May 4, 2026, U.S. Magistrate Judge Chi Soo Kim denied bail again, finding no condition or combination of conditions would reasonably assure that Defendant would not pose a danger to the safety of the community.  (ECF No. 22.)

Defendant filed the instant Motion to Revoke Denial of Bail and Detention Order on May 6, 2026.  (ECF No. 23.)  Defendant argues his second motion for bail was erroneously denied and he seeks to be released on his own recognizance pending trial.  (*Id.*)  Defendant contends he is neither a serious flight risk nor danger to the community, but even if this Court were to make such a finding, conditions for release may be fashioned to reasonably assure community safety and court appearances.  (*Id.*)   The Government opposes the motion, arguing Defendant's pretrial detention is necessary and supported by the serious nature of Defendant's crimes, the rebuttable presumption of dangerousness due to his drug charges, and his extensive criminal history.  (ECF No. 25.)  The Government contends no conditions will reasonably assure the safety of the community if Defendant is released.  (*Id.*)

This is Defendant's third motion for review of his pretrial detention, since the initial order of detention.  (ECF No. 10, 20, 23.)  Pretrial Services has prepared four reports assessing

appropriateness of pretrial detention — in every report, under each set of circumstances evaluated, Pretrial Services has recommended Defendant remain detained pretrial on the basis that no conditions can be fashioned to mitigate Defendant's risk of danger to the community.[1]

## II.    STANDARD OF LAW

"If a person is ordered detained by a magistrate judge . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order."  18 U.S.C. § 3145(b).  Under this provision, the district court conducts its own *de novo* review of the magistrate judge's detention order.  *United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990).  The district court "should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference."  *Id.* at 1193.

Under the Bail Reform Act, courts may detain a defendant prior to trial only where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e); *see also United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008).  Where a court finds probable cause to believe the defendant committed [*inter alia*] "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 *et seq*.),," a rebuttable presumption arises that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community."  18 U.S.C. § 3142(e)(3)(A).  "Although the presumption shifts a burden of production to the defendant, the burden of persuasion remains with the government."  *Hir*, 517 F.3d at 1086.  The government must establish defendant poses a flight risk by a clear preponderance of the evidence; whereas, the government must establish defendant poses a danger to the community by clear and convincing evidence.  *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985); *see also* 18 U.S.C. § 3142(f).  In determining whether the government has met its burden, courts consider

---

[1]    March 19, 2026 Pretrial Services Report (Initial Appearance); March 23, 2026 Pretrial Services Report (Detention Hearing); March 27, 2026 Pretrial Services Report (First Bail Review); May 4, 2026 Pretrial Services Report (Second Bail Review).

the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  18 U.S.C. § 3142(g).

"Doubts regarding the propriety of release should be resolved in favor of the defendant." *Motamedi*, 767 F.2d at 1405; *see also United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990).  Further, a court must release the defendant from pretrial detention under the least restrictive condition or combinations of conditions that will reasonably assure the appearance of the person and safety of the community.  *Motamedi*, 767 F.2d at 1405.

**III.    ANALYSIS**

Defendant asserts (1) he has rebutted the applicable presumption of dangerousness with credible evidence, and (2) the Government cannot satisfy its heavy burden to establish that no conditions will reasonably assure the safety of the community.  (ECF No. 23.)  The Government argues 18 U.S.C. § 3142(g) factors weigh against Defendant's release and he presents a significant danger to the community.  (ECF No. 25.)

The Court addresses each of these arguments in turn.  The Government focuses its arguments on Defendant's danger (*see* ECF No. 25), therefore, the Court likewise centers danger in its analysis.[2]

A.    18 U.S.C. § 3142(e) Rebuttable Presumption

As an initial matter, the parties agree the presumption of dangerousness applies to Defendant.  (ECF No. 23 at 6; ECF No. 25 at 2–3.)  Defendant is charged with two counts of distribution of methamphetamine (at least 500 grams) under the Controlled Substances Act (ECF No. 13) and, if convicted, Defendant faces a mandatory minimum term of imprisonment of ten years.  *See* 21 U.S.C. § 841(b)(1)(A)(viii).  Therefore, Defendant is subject to the presumption that no conditions will reasonably mitigate his danger to the community and therefore he should

---

[2]    However, the Court notes Defendant may also pose a flight risk.  In their March 23, 2026 report, Pretrial Services notes Defendant's criminal record includes warrants, arrests, or convictions for evading a peace officer in disregard of safety as well as failure to appear.

4

remain in custody pretrial.  *See* 18 U.S.C. § 3142(e)(3)(A).

Defendant aims to rebut the presumption of dangerousness with the argument that he has a positive employment history as a caretaker, he was actively participating in a mental health program, he lives with a long-term girlfriend of more than ten years, he helps care for his girlfriend's grandson, and he has a close relationship with his brother and mother.  (ECF No. 23 at 6.)  Additionally, Defendant's girlfriend is willing to serve as a third-party custodian as well as a bond surety with his mother.  (*Id.* at 7.)  The Government does not engage with Defendant's proffered rebuttal and instead argues it has met its burden under § 3142(g) factors.  (*See generally* ECF No. 25.)  Therefore, this Court presumes, without finding, that Defendant has rebutted the presumption sufficient to consider the statutory factors.[3]  *See Hir*, 517 F.3d at 1086 ("If a defendant proffers evidence to rebut the presumption of dangerousness, the court considers [§ 3412(g)] factors in determining whether the pretrial detention standard is met.")

However, "[t]he presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption 'remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g).'"  *Hir*, 517 F.3d at 1086 (quoting *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)).

### B.    18 U.S.C. § 3142(g) Factors

The Court weighs the four § 3142(g) factors below in addition to the presumption of dangerousness.  Because it is the Government's burden of persuasion, the Court begins with the Government's arguments for each factor.

#### i.    *Nature and Circumstances of the Offense Charged*

The Government alleges, as part of a criminal agreement with others, Defendant distributed fifteen pounds of methamphetamine in February 2026 during two separate drug deals with an undercover DEA agent, just days apart.  (ECF No. 25 at 4.)  The Government contends Defendant was part of a drug-trafficking cell headed by an incarcerated individual who orchestrated drug deals from a prison cell.  (*Id.*)  Defendant is alleged to have supplied drugs to

---

[3]    It bears noting that, in the March 23, 2026 initial order of detention, Judge Delaney found that Defendant had not rebutted the presumption on the record before her.  (ECF No. 9 at 2.)

the lead's girlfriend ("Trotter") who, in turn, delivered the drugs to an undercover agent. (*Id.*) At the time of the alleged conduct, Defendant was on bail for pending felony charges in Sacramento County Superior Court. (*Id.*)

Defendant asserts that he was not involved in the drug distribution ring. (ECF No. 26 at 3.) He exhorts this Court to apply the presumption of innocence, and notes that "nothing in [the Bail Reform Act] shall be construed as modifying or limiting the presumption of innocence." (ECF No. 23 at 10 (citing 18 U.S.C. § 3142(j)).)

Defendant is correct to say that charges alone "cannot carry the [G]overnment's burden of persuasion." (*Id.*) However, the Court must still consider the nature and circumstances of the offense as part of a motion for release. *See* U.S.C. § 3142(g) (a court "shall" consider the four factors). Indeed, the statute expressly lists "controlled substance" charges as notable for the purpose of balancing. *See id.* Defendant faces severe and dangerous controlled substance charges, involving large quantities of methamphetamine, as part of an organized ring. (*See* ECF No. 13.) While it is one factor for the Court to consider as part of a larger balancing test, while also presuming Defendant's innocence, here, the Court concludes the nature and circumstances of the charges are severe and dangerous and this factor weighs heavily against release.

ii.    *Weight of the Evidence*

The Government argues the weight of the evidence against Defendant is "overwhelming." (ECF No. 25 at 4.) The Government claims they surveilled Defendant handing a bag of drugs to Trotter who sold those drugs to an undercover agent on two occasions.[4] (*Id.*) In the first deal, allegedly, Trotter told the undercover agent that she was leaving to obtain drugs, drove to meet Defendant, got drugs, and returned to sell the drugs to the agent. (*Id.*) During the second deal, agents used drone footage to capture Defendant meeting Trotter and handing her drugs. (*Id.*) The Government supplies a photo of Defendant allegedly carrying ten pounds of methamphetamine on his way to meet Trotter. (*Id.*)

---

[4]    The Government also details the results of a search warrant executed on Defendant's brother's residence in an ongoing investigation. (ECF No. 25 at 5.) Without establishing a nexus with Defendant, the Court declines to consider that evidence as part of the instant motion.

6

Defendant refutes that surveillance shows him handing Trotter drugs, rather Defendant concedes only that it shows Defendant handing her a bag. (ECF No. 26 at 3.) Defendant argues the Government cannot establish what was in the bag, because law enforcement did not intercept Trotter on the occasions she met Defendant. (*Id.*)

It is not clear from this record whether the Government has direct evidence of the contents of the bag that Defendant handed to Trotter. However, the Government describes strong circumstantial evidence that Defendant distributed a controlled substance to Trotter who later sold it to an undercover agent, illustrated by photo evidence of at least one exchange. The Government proffers substantial evidence against Defendant. Although the weight-of-the-evidence factor is the least important of all the § 3142(g) factors, it is still relevant. *Motamedi*, 767 F.2d at 1407. Accordingly, this factor weighs against release.

### iii.    History and Characteristics of Defendant

The parties agree that Defendant has serious criminal history, most notably a 2007 felony conviction for voluntary manslaughter, along with a pending case in state court for smuggling contraband into jail. (ECF No. 26 at 2; ECF No. 25 at 6.) The Government also posits that Defendant is not a misguided youth, he served a 16-year prison sentence that did not deter him from engaging in methamphetamine trafficking at the age of 46. (ECF No. 25 at 6.) The Government contends if Defendant is sophisticated enough to participate in a scheme to smuggle contraband into a secure custodial environment, like jail, a Pretrial Services officer may not detect criminal behavior sufficient to mitigate Defendant's dangerousness. (*Id.*)

Conversely, Defendant argues that he changed his life after his 2007 conviction, he has no new convictions since then, and he is participating in mental health diversion to dismiss the pending contraband charges. (ECF No. 26 at 2.)

In its March 23, 2026 report, Pretrial Services notes Defendant's criminal record dates back to 1998 and includes at least 18 arrests or contacts with law enforcement, some of which are violent offenses. Additionally, Defendant has been arrested for at least six parole/probation violations. Defendant reports past gang affiliation. Pretrial Services also notes that mitigating factors include Defendant's willingness to engage in random drug testing, abide by location

monitoring and conditions, and his girlfriend's willingness to act as a third-party custodian.

The Court agrees with the parties that Defendant's criminal history is serious. Although his last felony conviction may have been approximately 20 years ago, the majority of that time (2005 to 2021) was spent incarcerated for that crime, and yet even on limited time, he has had numerous other encounters with law enforcement, including probation violations. The Court is further troubled by the violent charges, frequent violations, and a new charge of possessing a controlled substance in a secure custodial setting, particularly in light of his pending charges before this Court for distribution of a controlled substance. Within less than five years of his release from a conviction for manslaughter, Defendant has had multiple arrests and has more than one pending criminal case. Moreover, the criminal conduct underlying this case is alleged to have occurred while Defendant was on bail for his state court case. Even considering the mitigating factors here, Defendant's criminal history and characteristics weigh heavily against release.

### iv.    Danger to the Community if Defendant is Released

The Government contends Defendant presents a significant danger to the community because he is presumed to be a danger and there is nothing to suggest that court supervision would protect the community from Defendant if he decided to engage in criminal activity, which the Government alleges Defendant has engaged in, mere months ago. (ECF No. 25 at 6.)

Defendant argues "[t]he mere fact that the defendant is charged with a crime cannot be used as a basis for a determination of dangerousness" and reiterates the importance of the presumption of innocence. (ECF No. 23 at 10 (citing *States v. Scott,* 450 F.3d 863, 874 n.15 (9th Cir. 2006)). The Court agrees with Defendant on these points and has addressed these arguments in the first factor. Defendant then spends most of his real estate arguing that the proposed bond package is sufficient to mitigate any risk of danger to the community. (*See generally* ECF Nos. 23, 26.) Indeed, "[e]ven where a defendant poses a danger, he must still be released if there is a condition or combination of conditions that will reasonably assure the safety of any other person and the community." *Hir*, 517 F.3d at 1091–92 (quoting 18 U.S.C. § 3142(e)) (cleaned up). Therefore, the Court now considers whether Defendant's offered conditions could reasonably

assure the safety of the community.

Defendant's proffered bond package includes a $100,000 unsecured bond with co-signors of his mother and girlfriend, collateral bond(s) secured by $172,000 in his mother's home equity and approximately $70,000 in his girlfriend's vehicle equity (as *Vaccaro* bonds[5]), participation in a mental health diversion program, employment (that may be limited to in-home care), and a promise to abide by all conditions of release and all laws.  (ECF No. 23 at 3–4.)  Further, Defendant states he would agree to a variety of other conditions, including location monitoring or restriction to his home absent Pretrial Services' approval, random drug testing, home searches a Pretrial Services' discretion, and documentation of employment.  (ECF No. 26 at 4.)  Defendant further contends he is entitled to a presumption that he would abide by terms of release and that his bond package "more than reasonably assure[s] the safety of the community."  (ECF No. 23 at 3–4, 12.)

The Government contends that no conditions would mitigate danger here.  (ECF No. 25.) The Government notes that Defendant's flexible schedule of providing in-home health care freed him up to engage in the alleged drug trafficking which occurred during the middle of the day at approximately 2:00 p.m. and 5:00 p.m. on two different occasions.  (*Id.* at 5.)  Once, Defendant used his girlfriend's car to allegedly transport drugs.  (*Id.*)

The Court finds the set of conditions offered by Defendant does not meaningfully mitigate the significant risk of danger to the community posed by Defendant.  Defendant has a serious and sometimes violent criminal history over nearly thirty years, he has been arrested for numerous probation violations, he is currently facing charges for smuggling contraband into a controlled custodial environment, and now he is charged with distribution of methamphetamine in large quantities.  In fact, he was on bail, pending state court felony charges, when he was alleged to have engaged in the underlying criminal conduct and that is instructive to this Court as to Defendant's danger after release.  Defendant appears determined to continue to participate in criminal behavior, regardless of probation, custodial settings, or conditions of release.

[5]      *United States v. Vaccaro*, 51 F.3d 189 (9th Cir. 1995) (bond allowed for forfeiture of assets where forfeiture was conditioned on a promise to follow the law).

Defendant's sureties are willing to put their assets on the line, and that is not insignificant, but risking another's assets may not be as compelling to curb conduct as one's own. Moreover, although Pretrial Services found Defendant's girlfriend to be an appropriate third-party custodian, Defendant was living with her at the time of the alleged conduct and there is evidence that Defendant used her car as part of the alleged criminal conduct, which concerns this Court because it suggests a third-party custodian may not sufficiently assure safety to the community. Accordingly, the Court finds that Defendant poses a danger to the community despite the offered conditions and mitigating factors, and the danger-to-community factor weighs substantially against release.

Therefore, all of the § 3142(g) factors weighed significantly in favor of continued pretrial detention, in addition to the applicable presumption of dangerousness. Accordingly, after considering the parties arguments, the proffered conditions, and this Court's findings, the Government has shown by clear and convincing evidence that Defendant poses a danger to the community such that no condition or combination of conditions will reasonably assure the safety of the community.

**IV.    CONCLUSION**

For the foregoing reasons, the Court DENIES Defendant's motion (ECF No. 23), affirms Judge Delaney's detention order (ECF No. 9) and Judge Kim's order denying bail (ECF No. 22), and ORDERS Defendant to remain detained pending trial.

IT IS SO ORDERED.

Date: June 11, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE